(78 Misc. Rep. 436.)

### In re BOARD OF WATER SUPPLY OF CITY OF NEW YORK
### (ASHOKAN RESERVOIR, SECTION NO. 6).

(Supreme Court, Special Term, Albany County.   December, 1912.)

1. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO TAKE PROPERTY—COMPENSA-
   TION OF COMMISSIONERS.*
      Where the compensation of two of three commissioners of appraisal in
   a proceeding to acquire real estate for water supply of the city of New
   York was fixed after their death in unequal amounts, because the illness
   of one prevented him from serving during a portion of the time the other
   was serving, the surviving commissioner, who served practically the same
   length of time as the latter, will be given the same compensation for that
   period, and an additional compensation for services subsequently render-
   ed with the other commissioner. ·
      [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584;
   Dec. Dig. § 230.*]

2. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO TAKE PROPERTY—COMPENSA-
   TION OF COMMISSIONERS.
      A claim of commissioners of appraisal in a proceeding to acquire real
   estate for water supply of the city of New York for the amount expended
   for services of a stenographer, which the corporation counsel refused to
   furnish to report the commissioners' proceedings, though required by
   Laws 1905, c. 724, § 32, to furnish service, must be disallowed; the com-
   mission not being authorized to employ a stenographer at the expense of
   the city.
      [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584;
   Dec. Dig. § 230.*]

3. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO TAKE PROPERTY—COMPENSA-
   TION OF COMMISSIONERS.
      Where the report of a commission of appraisal in a proceeding to ac-
   quire real estate for water supply of the city of New York was not made
   till two years after organization, and included only six tracts of land
   valued at an aggregate of $5,995, a claim of one of the commissioners
   for 66 days' service and expenses and of another for 65 days' service and
   expenses is largely unwarranted, and will be reduced accordingly.
      [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584;
   Dec. Dig. § 230.*]

Application of the Board of Water Supply of the City of New York
to acquire real estate in Ulster County for Ashokan Reservoir, section
No. 6, and to tax the fees and expenses of Edward H. Nicoll and
another, as commissioners of appraisal.   Order entered.

Archibald R. Watson, Corp. Counsel, of New York City, William
McM. Speer, and Amasa J. Parker, Jr., of Auburn, for City of New
York.

Edward H. Nicoll and Rudolph Diedling, pro se.

CHESTER, J.   [1] The commission as first appointed in this mat-
ter was comprised of Judge Edgar L. Fursman, Charles B. Cox, and ·
Edward H. Nicoll.   Fursman and Cox both died before the conclu-
sion of the work assigned to them.   The claim of Commissioner Nicoll
on this application is for all his services and expenses from the start
to the conclusion of the work.   The claim of Commissioner Diedling
covers the period since the death of Commissioner Cox, in whose

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

place he was appointed. Commissioner Claudeus Rockefeller, who was appointed in place of Judge Fursman, has not yet presented his claim. After the deaths of Commissioners Fursman and Cox, their compensation and disbursements were taxed in the sum of $2,045 for the former and $1,845 for the latter. The difference in these amounts was apparently caused by the fact that the illness of Commissioner Cox prevented him from rendering services during a portion of the time while Commissioner Fursman was serving. Commissioner Nicoll claims services, not only for practically the same amount of time expended by Commissioner Fursman on the matters before them, but for 21 days additional in considering the award, preparing and verifying the report, and signing and filing the same, and for extra executive sessions with the other surviving commissioner, Mr. Cox, at Saugerties and Kingston.

It appears that after the death of Commissioner Fursman Commissioners Nicoll and Cox made a fourth separate report bearing date August 25, 1910, covering five pieces of property. In the third separate report signed by these two commissioners, and by Judge Fursman, it was stated with respect to these five parcels of land that Mr. Buck, the attorney for the several claimants, had expressed some dissatisfaction with various rulings of the commission as to the admissibility of evidence and declined to proceed with the trial of the cases until he could procure a review of the rulings by the Appellate Division. The commissioners state in their report that:

"We had, however, before being informed concerning the proposed action of Mr. Buck, carefully viewed and examined the said parcels as required by law."

The examination or viewing of the lands involved in this report having been completed and the taking of testimony concluded, there was nothing left for the surviving commissioners to do but to agree upon, prepare, sign, and file their report. This might reasonably require two or three executive sessions and the time necessarily spent by Mr. Nicoll in the preparation and filing of the report, but it would not require anything like the 22 days claimed to have been spent. Commissioner Fursman resided in Troy, and Commissioner Nicoll resides in New York, each about an equal distance from Kingston and from the Ashokan reservoir. Their necessary expenses in performing their duties while both were serving must have been substantially the same amount. I will therefore allow Commissioner Nicoll the same amount which the court has heretofore allowed to Commissioner Fursman covering the same period and $200 for services subsequent thereto and before the organization of the commission with its present membership.

This leaves the claims now presented by Commissioners Nicoll and Diedling for services and disbursements subsequent to the organization of the present commission to be considered. So long as Commissioner Fursman was chairman of the commission, it would appear that the work proceeded with considerable diligence, and there was no unnecessary time spent in performing it. That can hardly be said of the work since, if we are to judge by the character of the claims presented. As near as I can make out from the affidavits before me,

Commissioner Nicoll is claiming for services since December 28, 1910, which was the date when the new commission organized, 1 day for organization, 1 day for consultation, 11 days for travel, 15 days hearing claims, 6 days viewing property, 29 days in executive sessions, and 3 days in preparing and filing a report, or 66 days in all. Commissioner Diedling is claiming for 1 day taking oath, 1 day for organization, 15 days hearing claims, 12 days viewing property and 36 days in executive session, or 65 days in all.

[2] A claim is also made by each of these commissioners for an amount expended or incurred by them for stenographer's fees, the claim being that the corporation counsel refused to furnish a stenographer to report the proceedings of the commission, and that they were obliged to furnish one instead. There has evidently been considerable friction between these commissioners and the corporation counsel's office with respect to many matters before the commission, yet the law makes it the duty of the corporation counsel to furnish the commissioners of appraisal with necessary stenographers (section 32, c. 724, Laws of 1905), and there is no provision authorizing the commission to employ stenographers at the expense of the city. While the services rendered by the stenographer may have been worth the amount the stenographer has charged, yet the minutes before me show that under the direction of the commission the stenographer has copied in the minutes may hundred pages of documentary evidence, and public documents that can serve no purpose whatever, except to enhance the stenographer's charge against those who employed him. Nothing should be allowed on this application for such services.

[3] Commissioner Nicoll claims $557.77 for expenses since Judge Fursman's death other than the amount incurred for a portion of the stenographer's bill, and Commissioner Diedling claims $479.92 for expenses besides the amount paid by him for "official stenographer."

To judge how much time was reasonably and necessarily spent by the commissioners in performing their duty we may properly look at the number of claims for damages that were before this commission as now constituted and which have been included in the fifth separate report upon section 6. It appears that there were only six pieces of property in all. Three of these were of very inconsiderable value; the awards of the majority of the commission therefor having been $250, $235, and $200, respectively. One was a burial lot upon a farm in relation to which the parties agreed upon a compensation of $110 therefor, and there were two other parcels of land for which a majority of the commission awarded $2,000 and $3,200, respectively, making the aggregate awards covered by that report the sum of $5,995.

Commissioner Nicoll, however, who disagreed with the report of his associates, made a report that in his opinion the aggregate awards which should be made for said five parcels, other than the burial lot, should be $43,100, because of their adaptability and availability for reservoir purposes, and that the aggregate value thereof for farm purposes only was $10,100. It is urged that differences among the members of the commission as to the proper basis for the awards necessitated the unusual number of executive sessions mentioned in

the claims for services. These differences must have been apparent as soon as the question was first discussed and furnish no justification for the numerous sessions held. On the other hand, it would appear that, when they were found to be unreconcilable, the commissioners should have at once proceeded to the preparation of their majority and minority reports, instead of waiting the many months they did before doing so and continuing during that period to hold executive sessions. . Nor am I able to find anything in the circumstances of the case or in the affidavits that would justify or require the expenditure of anything like the amount of time which these commissioners claim to have devoted to these services, or that would warrant the expenditure of anything like the sums claimed to have been expended for travel, and for expenses incident to the services rendered. The commission as now constituted was organized, as has been stated, on December 28, 1910, yet its report was not made until over two years thereafter. I cannot avoid the conclusion that an unreasonable amount of time has been taken by this commission, and that their claims both for services and expenses are largely unwarranted when we consider the amount of time which could reasonably be required of them to fully perform all their duties with respect to the appraisals of damages in the cases mentioned. I have been quite inclined to send the whole matter to a referee to take testimony and report to the court thereon with respect to the reasonableness and necessity of the services and disbursements claimed to have been rendered and made, but that course would simply devolve an additional expense upon the city which it should not be called upon to bear. It has been held by the Appellate Division in this department in approving an opinion heretofore rendered by me upon another application for the compensation of commissioners with respect to another section that:

"The number and character of the cases before them, the circumstances under which the work was done, the amount of time reasonably required for doing it, the character and quality of the work done by the commissioners. and the amounts of their awards may all be considered in fixing their compensation." Matter of Bensel, Ashokan Reservoir, Section No. 16, 138 App. Div. 662, 123 N. Y. Supp. 217.

Following this decision and after giving consideration to all the facts stated in the affidavits before me concerning services and disbursements, and their reasonableness and necessity I allow to Commissioner Nicoll the sum of $750 for his services in addition to those hereinbefore mentioned, and to Commissioner Diedling a like sum for services, and to Commissioner Nicoll for disbursements, in addition to those hereinbefore mentioned, the sum of $350, and to Commissioner Diedling $300, the latter living at Saugerties, which is much nearer the place where the services were properly rendered than New York, where Commissioner Nicoll resides.

Ordered accordingly.